**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUZAKKIR HOSSAIN and SHAKHAWAT HASSAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIASTAR LIMITED d/b/a CHORKI and TRANSCOM LIMITED,<br><br>Defendants. | Case No. 1:24-cv-01201-KPF-OTW<br><br>Hon. Katherine P. Failla<br><br>Hon. Ona T. Wang |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

Dated: April 14, 2025

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Max S. Roberts
Victoria X. Zhou
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 1

PROCEDURAL HISTORY .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

I. Even Accepting Defendants' Assertions As True, The Court's Order Would Remain Substantially Unchanged .......... 4

II. Defendants Have Submitted No Evidence In Support Of Their Arguments .......... 5

III. Defendants Have Waived Arguments That Could Have Been Raised Earlier .......... 7

IV. Even If Defendants Contract With Payment Processors Incorporated Abroad, The Court Can Continue To Restrict Defendants To Those Processors .......... 8

V. The Order Contemplated Defendants Establishing A U.S. Bank Account .......... 9

CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alvarez v. City of New York*,
2017 WL 6033425 (S.D.N.Y. Dec. 5, 2017) ........ 4

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012) ........ 7

*Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp*,
965 F. Supp. 2d 402 (S.D.N.Y. 2013) ........ 3, 4

*In re Gen. Motors LLC Ignition Switch Litig.*,
2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ........ 4

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
113 F. Supp. 2d 613 (S.D.N.Y. 2000) ........ 8

*Indergit v. Rite Aid Corp.*,
52 F. Supp. 3d 522 (S.D.N.Y. 2014) ........ 4

*Keir v. Schoeberl*,
2025 WL 520764 (N.D.N.Y. Feb. 18, 2025) ........ 6

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
729 F.3d 99 (2d Cir. 2013) ........ 4

*Kulhawik v. Holder*,
571 F.3d 296 (2d Cir. 2009) ........ 6

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*,
265 F.3d 97 (2d Cir. 2001) ........ 8

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) ........ 4, 8

*Sys. Mgmt. Arts, Inc. v. Avesta Tech., Inc.*,
106 F. Supp. 2d 519 (S.D.N.Y. 2000) ........ 4

*Walker v. Carter*,
2016 WL 6820554 (S.D.N.Y. Feb. 4, 2016) ........ 8

**STATUTES**

18 U.S.C. § 2710 ........ 2

**RULES**

Federal Rule of Civil Procedure 59(e) ........................................................................................ 3

## INTRODUCTION

Muzakkir Hossain and Shakhawat Hassan ("Plaintiffs") submit this motion in opposition to Mediastar Limited d/b/a Chorki and Transcom Limited's (collectively, "Defendants" or "Chorki") Motion for Reconsideration.

## STATEMENT OF FACTS

Defendants run a subscription-based streaming service for Bangladeshi movies and TV shows. Compl. ¶¶ 11, 14. By their own admissions, Defendants maintain a substantial presence in the United States. They have at least 3,252 active U.S. subscribers each paying approximately $10 monthly. 3/17/25 Hearing Tr., ECF No. 59 ("Tr.") at 15:1-2, 21:12-14. Plaintiffs' evidence shows a much larger presence in the United States with approximately 13,000 users located here who paid a total of $341,587.81 through the iOS App Store during the relevant period. Kopel Preliminary Injunction Decl. Ex. 8. United States traffic comprises "approximately 5.8% of unique Website visits" to Chorki worldwide. Compl. ¶ 19. Moreover, Defendants deliberately targeted U.S. consumers with unique discounts featuring the American flag and Statue of Liberty. Compl. ¶ 17. Defense counsel has confirmed that Defendants' CEO visited Los Angeles for a street fair where they offered U.S.-specific discounts. Tr. at 15:3-7.

After this lawsuit was filed, Defendants took measures to remove their assets from U.S. jurisdiction. Between November 2024 and February 2025, Defendants moved their digital assets from U.S. servers (operated by an American company, ViewLift) to servers in Bangladesh operated by a company called Gotipath. ECF No. 47 at 4-5. While Defendants claim Gotipath is a "sister company," Tr. at 25:4-5, Plaintiffs have noted that the timing of this transfer during pending litigation suggests an attempt to avoid potential judgment.

At the March 17, 2025 hearing on Plaintiffs' preliminary injunction motion, Defendants did not claim that they lacked U.S. bank accounts or that they operated through PayPal India or

Stripe India. Instead, when discussing the Court's potential order regarding U.S. funds, defense counsel suggested Defendants might add "multiple other bank accounts … to find some way without violating any law." Tr. at 22:5-6.

**PROCEDURAL HISTORY**

On February 16, 2024, Plaintiffs filed this putative class action alleging that Defendants violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by disclosing users' personally identifiable information to third parties without proper consent. Compl. ¶¶ 1-7. The disclosed information included full names, email addresses, and video titles viewed. Compl. ¶¶ 25-27.

Plaintiffs served Defendant Transcom Limited on March 27, 2024. ECF Nos. 10-13, 16. After obtaining Court approval for alternative service, Plaintiffs served Defendant Mediastar Limited by email on April 1, 2024. ECF Nos. 14-15, 17-18.

Rather than responding to the Complaint, Defendants sought and received two extensions totaling ninety days. ECF Nos. 19-22. Nevertheless, after requesting these accommodations, Defendants ultimately defaulted resulting in the Clerk's Certificate of Default on July 16, 2024. ECF No. 30-31.

On February 18, 2025, Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction to prevent Defendants from: (1) moving the Chorki.com domain outside the United States; (2) switching from U.S.-based payment processors; and (3) transferring funds processed in the United States to accounts outside the United States. ECF No. 51. The Court granted the TRO in part.

At the March 17, 2025 preliminary injunction hearing, the Court granted Plaintiffs' motion, restraining Defendants from: (1) removing the Chorki.com domain from their U.S.

registrar; (2) switching payment processors; and (3) depositing funds processed by U.S. payment processors into accounts outside the United States. Tr. at 31:8-14.

On March 31, 2025, Defendants filed this Motion for Reconsideration, claiming for the first time that they contract only with PayPal India and Stripe India rather than their U.S. counterparts, have no U.S. bank accounts, and cannot comply with the Court's order due to Indian financial regulations. ECF No. 61 at 4.

## LEGAL STANDARD

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (citation and quotation marks omitted), *aff'd*, 577 F. App'x 11 (2d Cir. 2014). The standard for such motions is "strict" and "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 3443623, at *1 (S.D.N.Y. Aug. 9, 2017) ("It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [c]ourt." (citation and quotation marks omitted)). A movant may not "rely upon facts, issues, or arguments that were previously available but not presented to the court." *Indergit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 523 (S.D.N.Y. 2014) (citation omitted). Nor is a motion for reconsideration "the proper avenue for the submission of new material." *Sys. Mgmt. Arts, Inc. v. Avesta Tech., Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000). "Rather, to be entitled to reconsideration, a movant must demonstrate that the [c]ourt overlooked controlling decisions or factual matters that were put before it on the

underlying motion, which, had they been considered might reasonably have altered the result reached by the court." *Arthur Glick Truck Sales*, 965 F. Supp. 2d at 405 (citation and quotation marks omitted); *Shrader*, 70 F.3d at 257 (same). In other words, "[a] motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Alvarez v. City of New York*, 2017 WL 6033425, at *2 (S.D.N.Y. Dec. 5, 2017) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *see also Indergit*, 52 F. Supp. 3d at 523 (same).

## ARGUMENT

### I. EVEN ACCEPTING DEFENDANTS' ASSERTIONS AS TRUE, THE COURT'S ORDER WOULD REMAIN SUBSTANTIALLY UNCHANGED

Even if the Court were to accept Defendants' new assertions regarding their payment processing arrangements at face value, most of the Court's order should remain unchanged. The preliminary injunction addresses legitimate concerns about asset preservation that remain valid regardless of Defendants' purported contractual arrangements.

First, nothing in Defendants' motion touches on the Chorki.com domain or keeping the domain within the United States.

Second, Defendants' possible contracts with Paypal and Stripe's Indian subsidiaries do not alter the Court's order that Defendants should not switch payment processors. While no subpoena was issued to Paypal, Stripe has produced documents showing U.S. payment volume from subscribers, and both entities currently receive funds from subscribers within the United States. As a result, it stands to reason that Stripe and Paypal's subsidiaries will comply with directives from the Court. To the extent that Defendants refer to requirements under an unnamed Indian law, their argument is too vague to carry any weight. And even if Defendants are in fact

using Stripe India or Paypal India, Defendants have provided no reason why they cannot switch to the U.S. versions of those entities. Finally, there is no bar on a foreign entity opening a U.S. bank account.[1]

According to Plaintiffs' testing and analysis, payments from U.S. subscribers through the Paypal entity that Defendants are using are made in U.S. dollars and traceable to servers from Fastly, Inc., a cloud computing company in the United States. Kopel Decl. ¶ 4. Payments through the Stripe entity Defendants are using are also made in U.S. dollars and traceable to servers from Amazon.com, Inc. Kopel Decl. ¶ 5.

Defendants should have already been complying with the Court's TRO before the March 17, 2025 preliminary injunction hearing. To bring these new issues before the Court now ought to raise an eyebrow, especially given that Defendants' apparent plan for months has been to evade the Court's jurisdiction. Unless the Court clamps down now, Defendants will continue to flout the Court's preliminary injunction order.

## II. DEFENDANTS HAVE SUBMITTED NO EVIDENCE IN SUPPORT OF THEIR ARGUMENTS

Defendants' motion for reconsideration rests on novel evidence-free factual assertions. Despite arguing that the Court's preliminary injunction ruling relies on three "misapprehensions," ECF No. 61 at 2, Defendants have failed to submit any declaration, affidavit, or document as "new evidence" of their asserted facts. *Keir v. Schoeberl*, 2025 WL 520764, at *1 (N.D.N.Y. Feb. 18, 2025). Courts in the Second Circuit have held that such unsupported assertions in motion papers are insufficient to establish facts, particularly when those purported facts contradict prior representations to the court. *See, e.g.*, *Kulhawik v. Holder*,

---

[1] Kirthi Mani, A Checklist for Foreign Companies Opening a Bank Account in the United States, at 3, https://www.trade.gov/sites/default/files/2023-08/BankingChecklist.pdf

571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence."). Defendants have also made no showing in their motion or offered any explanation why these facts were unavailable at the time of the March 17, 2025 preliminary injunction hearing.

First, Defendants deny that they "operate" in the United States. ECF No. 61 at 2. But not only do Defendants fail to explain what "operate" means in this context or set forward concrete facts describing their contention, they also fail to provide any evidence for their argument at all. Moreover, Defendants' argument is directly contradicted by Defendants' own representations at the March 17, 2025 preliminary injunction hearing where Defendants admitted that they have at least 3,252 active paying subscribers who "downloaded in the geographic area of the United States." Tr. at 15:1, 16:23-25.

Second, Defendants deny that they "directly contract[] with U.S. payment processors." ECF No. 61 at 2. Instead, Defendants insist that they "contract[] solely with PayPal India and Stripe India." ECF No. 61 at 4. Despite this assertion, Defendants have provided no such contracts. Nor have they cited any law to support their contention that "PayPal India is legally required to transfer received funds directly to a linked bank account without delay." ECF No. 61 at 4. Moreover, Defendants' motion is wholly silent regarding its use of Google and Apple to process payments on Defendants' mobile applications.

Third, Defendants deny that they "maintain[] U.S. banking infrastructure to retain funds domestically." ECF No. 61 at 2. But Defendants have provided no evidence explaining what their banking infrastructure looks like or where their funds from the United States are going. Defendants' failure to evidence their claims strongly suggests that no such evidence exists or that any constraints which may exist do not function in the manner Defendants claim.

## III. DEFENDANTS HAVE WAIVED ARGUMENTS THAT COULD HAVE BEEN RAISED EARLIER

Defendants' motion for reconsideration relies on assertions about their payment processing arrangements that they failed to raise during the March 17, 2025 preliminary injunction hearing. These late arguments are waived. The Second Circuit has consistently held that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader*, 70 F.3d at 257. A party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed. *Walker v. Carter*, 2016 WL 6820554, at *4 (S.D.N.Y. Feb. 4, 2016).

During the March 17, 2025 preliminary injunction hearing, and after the TRO had been issued, Defendants had an opportunity to present all arguments regarding their ability to comply with the proposed injunction. At no point did Defendants assert that they contract exclusively with PayPal India and Stripe India rather than their U.S. counterparts or face legal constraints under Indian financial regulations. Instead, defense counsel suggested Defendants could "keep the bank account, but there is multiple other bank accounts you could add in the website." Tr. at 22:3-6. This statement shows that Defendants were aware of the banking issues but adopted a fundamentally different position than the one now asserted in their motion.

Defendants offer no explanation for failing to raise these purported constraints at the preliminary injunction hearing. Defendants' payment processing arrangements would have been fully known to them beforehand. Defense counsel should have had information about

Defendant's receipt and processing of payments readily available. Their failure to present these arguments at the appropriate time constitutes a waiver of those arguments.

Courts in the Second Circuit routinely deny reconsideration where a party seeks to introduce new arguments that could have been raised earlier. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 115-16 (2d Cir. 2001) (affirming denial of reconsideration based on arguments that could have been raised before the district court's ruling on reconsideration); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (recognizing that reconsideration is an "extraordinary remedy" and denying reconsideration where arguments were available to the parties in the briefing of the original motion). Any claim of impossibility or impracticability in particular should have been raised at the preliminary injunction hearing, or even at the TRO hearing. It is unclear how Defendants have only now run into compliance issues when they should have already been complying with the TRO that the Court issued earlier.

## IV. EVEN IF DEFENDANTS CONTRACT WITH PAYMENT PROCESSORS INCORPORATED ABROAD, THE COURT CAN CONTINUE TO RESTRICT DEFENDANTS TO THOSE PROCESSORS

Defendants' purported contracts with PayPal India and Stripe India rather than their U.S. counterparts does not necessarily frustrate the Court's order. Inasmuch as these entities comply with orders from U.S. Courts, they can still be subject to this Court's order that the money should be deposited into U.S.-based bank accounts. Defendants argue that this would violate an unidentified Indian law. But this argument is too undeveloped for Plaintiffs to respond. Without even knowing the purported law being referenced, or whether it says what Defendants' counsel claims, how are Plaintiffs meant to address this argument? Regardless, it would not require much effort for Defendants to simply use PayPal and Stripe in the U.S. rather than in India.

Even more importantly, as noted above, Defendants remain silent as to Apple and Google. Defendants have been under Court order to deposit these funds into a U.S. bank account but continue to baselessly ignore the Court's order for them to do so.

## V. THE ORDER CONTEMPLATED DEFENDANTS ESTABLISHING A U.S. BANK ACCOUNT

The Court has already considered Defendants' argument regarding possession of a U.S. bank account. During the March 17, 2025 preliminary injunction hearing Plaintiffs' counsel stated "as of now, we do not have any insight into where the money goes after it goes through the payment processors. I am unaware as whether the defendants have bank accounts in the United States. For all I know, it's deposited directly into a foreign bank account in the first instance. And that's why I think oversight is required." Tr. at 27:20-25. At no point during the hearing did defense counsel object that Defendants lacked a U.S. bank account or that establishing one would be impossible. Instead, defense counsel's statements suggested the opposite, as he noted that Defendants could add "multiple other bank accounts." Tr. at 22:3-6. At the time of the hearing, it was understood that Defendants might need to establish a new U.S.-based account. Defendants cannot relitigate this issue now.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration should be denied.

Dated: April 14, 2025

Respectfully submitted,

By: */s/ Yitzchak Kopel*
Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Max S. Roberts
Victoria X. Zhou
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150

Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

*Attorneys for Plaintiffs*

**RULE 4(B) CERTIFICATION**

I, Yitzchak Kopel, certify that I prepared this memorandum of law and that this memorandum complies with Rule 4(B) of Judge Failla's Individual Rules of Practice in Civil Cases. According to the word processor used to prepare this memorandum, this memorandum contains 2,648 words and spans 9 pages.

__________________________
Yitzchak Kopel