**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

MUZAKKIR HOSSAIN, *et al.*,

Plaintiffs,

v.

MEDIASTAR LIMITED d/b/a CHORKI, *et al.*,

Defendants.

Civil Action No. 1:24-cv-01201-KPF

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND MOTION TO DROP PARTIES**

## INTRODUCTION

Plaintiffs' Opposition (ECF No. 88) attempts to shield their fundamentally deficient Complaint behind the procedural bar of a default, all while failing to address the core deficiencies of their case. Their Opposition confirms what Defendants have argued all along: Plaintiffs possess no factual evidence to support their speculative claims and rely entirely on conclusory allegations that fall far short of the pleading standards set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*First,* the default should be vacated. The delay in Defendants' appearance was a direct result of extraordinary circumstances, severe political unrest, and internet blackouts in Bangladesh, constituting "excusable neglect" under Federal Rule of Civil Procedure 60(b)(1). Plaintiffs have suffered no cognizable prejudice from this brief delay.

*Second,* on the merits, Plaintiffs' Opposition offers nothing more than a recitation of the Complaint's vague allegations. They point to a "dynamic analysis" but provide no factual details about its methodology or results, failing to plausibly allege a violation of the Video Privacy Protection Act ("VPPA"). Their standing argument conflates the existence of a statutory violation with the plausibility of that violation's occurrence.

*Finally,* the Motion to Drop Parties should be granted. Plaintiffs' jurisdictional theory as to Transcom Limited is based on public relations puffery, not facts demonstrating the "complete control" necessary to pierce the corporate veil. Furthermore, Plaintiff Shakhawat Hassan's claims are distinct and require entirely different proof, making his joinder improper under Rule 20(a).

For these reasons, and those set forth in Defendants' initial motions, the Court should vacate the default, dismiss the Complaint for failure to state a claim, and drop the improperly joined parties.

## ARGUMENT

### I. THE DEFAULT SHOULD BE VACATED: DEFENDANTS HAVE DEMONSTRATED EXCUSABLE NEGLECT AND PLAINTIFFS SHOW NO PREJUDICE

#### A. The Delay Was Due to Extraordinary Circumstances Constituting Excusable Neglect

Plaintiffs' characterization of Defendants' default as "willful" ignores reality. The record is clear that the delay was caused by the July 2024 nationwide political upsurge in Bangladesh, which included government-imposed internet shutdowns and severe disruptions to business operations. These events were widely reported and constitute precisely the type of "extraordinary circumstances" beyond a party's control that courts recognize as excusable neglect. *See, Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993).

The fact that some limited email communication with vendors persisted during this turmoil does not mean Defendants were capable of conducting a complex U.S. legal defense. Business continuity for a Bangladeshi company during a national crisis is a separate matter from mounting a litigation strategy in a foreign jurisdiction. The Court's prior observation regarding asset transfers, *See, Hossain*, 2025 WL 2578128, at *1, was in the context of a preliminary injunction motion and is not a final finding of bad faith that precludes a finding of excusable neglect here. The transition of legal counsel, compounded by these force majeure events, further justifies the delay.

Defendants have moved diligently to address this case since conditions stabilized and counsel was properly admitted. The factors for vacating a default willfulness, meritorious defense, and prejudice. *See, Gunnells v. Teutul,* 469 F. Supp. 3d 100, (S.D.N.Y. 2020) also weighs in Defendants' favor. The delay was not willful but forced, and Defendants possess multiple meritorious defenses.

#### B. Plaintiffs Fail to Demonstrate any Prejudice from the Brief Delay

Plaintiffs' claim of prejudice that Defendants used the delay to transfer assets is both speculative and irrelevant to the adjudication of a motion to dismiss for failure to state a claim. Prejudice in the context of vacating a default refers to prejudice that thwarted the plaintiff's

recovery or remediable opportunities in the litigation, not speculative fears about enforcement. *See, Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). Plaintiffs have not shown that the brief delay hindered their ability to litigate this case or respond to the motions at hand. Their ability to file a lengthy opposition brief belies any claim of litigation prejudice. The core issue remains the legal sufficiency of their Complaint, which the delay did not affect.

## II. PLAINTIFFS' OPPOSITION CONFIRMS THEIR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

### A. Plaintiffs' Reliance on "Dynamic Analysis" is a Conclusory Parroting of the Complaint

Plaintiffs' Opposition merely parrots the Complaint's allegations, claiming their "dynamic analysis" revealed specific disclosures. (ECF No. 88 at 6). However, they provide zero factual details about this analysis. Who conducted it? What was the specific methodology? What exact data packets were observed being sent to which specific third party at what time? These are not questions for discovery; they are the basic factual allegations required to nudge a claim from conceivable to plausible. *Iqbal,* 556 U.S. at 678.

Plaintiffs allege, for example, that Defendants disclosed information to "Meta (Facebook), CleverTap, Google, and ViewLift." (ECF No. 88 at 11). This lumping together of multiple entities is the epitome of conclusory pleading. They fail to specify what data was sent to which party, through what specific technological mechanism, and on what occasion. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

The VPPA requires a "knowing[] disclosure]." 18 U.S.C. § 2710(b)(1). Plaintiffs' theory appears to be that the mere integration of common SDKs and APIs constitutes a "disclosure." This is a legal conclusion, not a factual allegation. Without specific facts plausibly alleging that Defendants actively transmitted specific PII tied to specific video viewing to these third parties, the Complaint fails to meet the Twombly standard. Their reliance on the Privacy Policy is equally unavailing, as a general policy does not plausibly allege that the specific, alleged VPPA-violating disclosures actually occurred as to the named Plaintiffs.

**B. Plaintiffs Misconstrue the Standing Inquiry Under the VPPA.**

Plaintiffs correctly note that a violation of the VPPA can constitute a concrete injury for Article III standing. *See,* (ECF No. 88 at 7) (citing *Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533 (2d Cir. 2025); *Eichenberger v. ESPN, Inc.,* 876 F.3d 979 (9th Cir. 2017)). However, this principle is irrelevant if the Complaint fails to plausibly allege that such a violation occurred in the first place. *Salazar* and *Eichenberger* involved complaints where the alleged violation was itself plausibly pled. Here, it is not.

The Supreme Court has made clear that a bare procedural violation [without concrete harm] is insufficient for standing. *See, TransUnion LLC v. Ramirez,* 141 S. Ct. 2213, (2021). Plaintiffs' alleged injury, "loss of control over their personal information," Id. ¶6 is entirely hypothetical and non-specific without factual support showing how this loss manifested in a concrete way. Their failure to plausibly allege the underlying violation is fatal to both their standing and the merits of their claim.

**III. THE MOTION TO DROP PARTIES SHOULD BE GRANTED**

**A. Personal Jurisdiction Over Transcom is Absent and Plaintiffs' "Alter Ego" Theory is Unsupported**

Plaintiffs' entire theory of personal jurisdiction over Transcom rests on public interviews and corporate website descriptions, which are classic examples of corporate puffery insufficient to pierce the corporate veil. (ECF No. 88 at 11-13). Statements about "synergy," "muscle power," and being an "Ironman suit" are not evidence of the operational control and domination required to disregard corporate separateness. *See, United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (noting that a parent company's liability must rest on concrete allegations of control, not corporate structure alone).

1. **Plaintiffs Cannot Overcome the Presumption of Corporate Separateness Between Transcom and Mediastar**

It is a bedrock principle of corporate law that a parent corporation and its subsidiary are presumed to be separate and distinct entities. *See, William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 138 (2d Cir. 1991). Plaintiffs seeking to pierce the

corporate veil and hold a parent liable for the actions of its subsidiary face a "heavy burden." Plaintiffs here rely on nothing more than corporate puffery and aspirational marketing language, failing utterly to meet this heavy burden with specific facts demonstrating the "complete control" necessary for veil-piercing.

In *Walkovszky v. Carlton,* 8 N.Y.2d 414, 418 (N.Y. 1966), is the foundation of New York's veil-piercing jurisprudence. It established the strict legal standard that requires a showing of both complete domination and a fraudulent or wrongful purpose, and it explicitly held that undercapitalization alone is not enough to meet this burden. For the plaintiff's original scenario, this case would be a significant hurdle, as it would require them to show more than just corporate puffery; they would need to prove the kind of "wrong" that the Walkovszky court found lacking.

**a. The Undisputed Evidence Confirms Transcom and Mediastar are Formally and Operationally Separate.**

It is established that Transcom Limited and Mediastar Limited are legally distinct entities that respect corporate formalities.

**Separate Legal Existence:** Transcom and Mediastar are separately incorporated entities under the laws of Bangladesh, each with its own corporate registration, governing documents, and legal identity.

**Independent Operations:** Mediastar manages the daily operations of the Chorki streaming service through its own dedicated management team. Decisions regarding content acquisition, platform technology, user interface, and data management are made by Mediastar personnel without direction from Transcom.

**Respect for Corporate Formalities:** The companies maintain separate financial records, bank accounts, and tax filings. While Transcom, as an investor, may receive financial reports and provide broad strategic oversight, this is a far cry from the day-to-day domination required to pierce the veil. *See, Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184-85 (2d Cir. 1998) (holding that a parent's "monitoring of the subsidiary's performance" does not establish domination).

**b. Plaintiffs' "Alter Ego" Theory is Based on Marketing Puffery, Not Evidence of Domination.**

Plaintiffs ground their entire jurisdictional theory on public relations statements, which are insufficient as a matter of law to establish the "complete domination" necessary for veil-piercing. *See,* e.g., *EED Holdings v. Palmer Johnson Acquisition Corp.,* 228 F.R.D. 508, 9 (S.D.N.Y. 2005), rejecting alter ego claims based on "loose language" about corporate relationships.

The United States Court of Appeals for the Second Circuit held that these kinds of overlaps, branding, or limited shared statements don't by themselves show that the parent company dominated the subsidiary to the point where the veil should be pierced. The court emphasized several factors: whether the subsidiary was adequately capitalized; whether it had independent officers; whether corporate formalities were observed; whether its books and records were separate; if there was significant intermingling of functions or assets. *See, Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1459 (2d Cir. 1995)

**Metaphorical Language is Not Evidence of Control:** Phrases like "Ironman suit" and "muscle power" are classic examples of corporate puffery, vague, metaphorical expressions of pride and support. They are not, and cannot be construed as, admissions of the type of operational control required by *Bestfoods* and its progeny. To treat such sloganeering as evidence of legal domination would render the veil-piercing doctrine a nullity.

**Financial Support Does Not Equate to Domination:** The fact that Transcom is identified as an "investor" (ECF No. 88 at 14) in Chorki demonstrates a financial relationship, not an alter ego relationship. This fact of being an investor or majority shareholder alone says nothing about whether Transcom directs Mediastar's operations. In *Fletcher*, Courts have consistently refused to pierce the corporate veil where a subsidiary's operations are integrated with those of its parent or where the parent provides the subsidiary with financial support.

**Strategic Oversight is Not Day-to-Day Control:** The statement that "aligning with Transcom is all that is required for Chorki to make big decisions" describes appropriate investor oversight for major corporate actions, not the day-to-day operational control over the specific technical implementations (e.g., SDK integrations) at issue. *See, United States v. Bestfoods,* No.

97-454, 53 (1998) ("It is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.").

**c. Plaintiffs Cannot Show That Transcom Used Mediastar to Commit a Fraud or Wrong.**

Even if Plaintiffs could show domination (which they cannot), their claim would fail on the second prong of the veil-piercing test. They must allege that Transcom used its control over Mediastar "to perpetrate a fraud or other wrong." *See, William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 134 (S.D.N.Y. 1985). The alleged "wrong" here is the violation of the VPPA through the technical design of the Chorki application. There is no allegation that Transcom directed, participated in, or even had knowledge of these specific technical implementations. The Complaint is utterly devoid of any facts suggesting Transcom used Mediastar as an instrument to violate the VPPA.

**2. Without Veil-Piercing, Plaintiffs Cannot Impute Mediastar's Contact to Transcom to Establish Personal Jurisdiction**

A court may exercise jurisdiction over a foreign parent corporation based on the forum contacts of its subsidiary only if the subsidiary is an "alter ego" or "mere department" of the parent. *See, Jazini,* 148 F.3d 181, 184-85. Because Plaintiffs have failed to make the requisite showing for alter ego liability, as detailed above, Mediastar's contacts with the United States cannot be imputed to Transcom. *See, Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 337 (1925) (The U.S. The Supreme Court held that even though the parent controlled its subsidiary, the corporate separation was respected, and jurisdiction could not be exercised over the parent based solely on the subsidiary’s activities in the forum.)

The law presumes that a parent and subsidiary are separate entities. To overcome this presumption, a plaintiff must make a "substantial showing" that the parent "dominated the subsidiary" to such a degree that it was a "mere department." *See, Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998). Plaintiffs have not done so. The Declaration of Redoan Rony (ECF No. 82), which the Plaintiffs attack, properly affirms this separateness from the perspective of the subsidiary’s CEO. Fed. R. Civ. P. 56(c)(4). Plaintiffs offer no evidence that Transcom

directs Chorki's day-to-day operations or that Chorki's contacts with the forum can be fairly imputed to Transcom. *See, Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 931 (2011).

**B. Plaintiff Hassan is Misjoined and Lacks Standing**

Plaintiffs' submission of a declaration from Mr. Hassan does not cure the fundamental misjoinder of his claims. Even accepting his claim of being a subscriber, his individual transaction signing up in April 2023, watching specific videos, is a separate occurrence from that of the other Plaintiff. The evidence needed to prove his specific subscription and viewing history is unique to him.

Rule 20(a) requires that claims arise from the "same transaction, occurrence, or series of transactions or occurrences." While all class members may allege a similar type of violation, the specific transactions in each individual's subscription and viewing history are distinct. *See, Kalie v. Bank of Am. Corp.,* 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (severance warranted where claims were based on "independent transactions"). Joining Mr. Hassan's forces as Defendants to defend against a claim involving different factual circumstances is inefficient and prejudicial.

**CONCLUSION**

For the reasons stated herein and in Defendants' moving papers, the Court should:

1. Vacate the clerk's entry of default.
2. Grant Defendants' Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6).
3. Grant Defendants' Motion to Drop Parties.
4. Grant such other and further relief as the Court deems just and proper.

Date: September 26, 2025

Respectfully,
By: /s/ *Timothy Raju Mahajan*
Timothy Raju Mahajan Esq.
DC Court BAR ID: MD0163
Phone: (202) 600-0455,
*Counsel for Defendants*